**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, **Luis Polo**, being duly sworn, do hereby depose and state the following:

1.      I am a Border Patrol Agent with the United States Border Patrol and have been so employed since March 27, 2006.  As a Border Patrol Agent, I have gained experience in conducting investigations related to the illegal entry of aliens into United States.  I attended the Federal Law Enforcement Training Center at Artesia, New Mexico, where I received training for the purpose of accomplishing my Border Patrol duties, which includes training in immigration related law and matters.  Furthermore, I also receive training on a continuing basis for the purpose of maintaining my proficiency pertaining to Border Patrol work.

2.      Investigation reveals that, on or about Thursday, May 21, 2026, **José Luis RODRIGUEZ-NUÑEZ** was found in the United States, upon being encountered, at or near Rio Piedras, Puerto Rico, while present in the United States illegally, and after having been previously deported.  Therefore, this Affidavit is made in support of a Criminal Complaint against **José Luis RODRIGUEZ-NUÑEZ** based on violation of **Title 8, United States Code, Sections 1326(a) & (b)(1),** re-entry of removed alien subsequent to a felony conviction.

3.      I make this affidavit based on my own personal knowledge and on oral and written reports by other federal, state, and/or local law enforcement agents and officers that investigated this matter.  This affidavit does not contain all the information derived from this investigation only that which is sufficient to demonstrate probable cause to believe that a crime has been committed.

1

4.      On or about Thursday, May 21, 2026, at approximately 06:47 a.m., Ramey Sector Border Patrol Agents (BPAs) were conducting roving patrol operations at or near Bo. Obrero in San Juan, Puerto Rico. This area is known for frequent drugs and immigrant smuggling activity.

5.      During patrol, BPAs observed a male subject walking along a public roadway from Borinquen Street and crossing onto Nin Road in Bo. Obrero Ward.

6.      Upon noticing the Border Patrol vehicle, the subject appeared visibly nervous, avoided eye contact with the agents, and altered his demeanor in the presence of law enforcement.

7.      Based on training and experience, BPAs recognized this type of behavior as consistent with individuals attempting to avoid contact with law enforcement.

8.      A BPA approached the subject and conducted a consensual encounter.  During the encounter, BPA identified himself as immigration officer and proceeded to interview the encountered / walking subject which identified himself as **José Luis RODRÍGUEZ-NUÑEZ ("RODRÍGUEZ")**.

9.      BPA questioned **RODRÍGUEZ** as to his citizenship and nationality.

11.      **RODRÍGUEZ** freely admitted to being a citizen & national of the Dominican Republic unlawfully present in the United States.

12.      At the time, **RODRÍGUEZ** was arrested & transported to U.S. Border Patrol Ramey Station in Aguadilla, Puerto Rico for further investigation, processing & removal proceedings.

13.      Once at Ramey Station, **RODRÍGUEZ's** photograph and fingerprints were taken & entered into different law enforcement database systems.  Record checks yielded positive & revealed that **RODRÍGUEZ** has prior immigration & criminal history.

14.    As to **RODRÍGUEZ's** immigration & criminal history:

(a)    On August 2, 1999, **RODRÍGUEZ** was encountered upon entering illegally by boat at or near Rincón, Puerto Rico.  When processed for immigration, **RODRÍGUEZ** was offered & granted a Voluntary Departure back to the Dominican Republic.

(b)    On March 4, 2005, **RODRÍGUEZ** illegally entered the United States at or near Rincón, Puerto Rico.  When processed for immigration, **RODRIGUEZ-NUÑEZ** was offered & granted a Voluntary Departure to the Dominican Republic.

(c)    On May 1, 2005, **RODRÍGUEZ** illegally entered the United States at or near Aguadilla, Puerto Rico.

(d)    On November 10, 2005, Immigration & Customs Enforcement (ICE) received information & descriptions of three (03) illegal aliens known as smugglers & boat captains to be working in construction in La Cantada residential complex in Trujillo Alto, Puerto Rico.  At the time, one of the three subjects, was identified as Jose Luis Rodriguez-Nuñez, a Dominican Republic citizen & national, who was in possession of a U.S. Social Security card XXX-XX-6357 bearing the name of "Manuel Colón Collazo". At the time, **RODRÍGUEZ** was identified positively to have two prior Voluntary Departures. **RODRÍGUEZ** was offered and granted for a third time another Voluntary Departure back to the Dominican Republic.

(e)    On or about October 1, 2014, **RODRÍGUEZ** illegally entered the United States at or near Rincón, Puerto Rico.

3

(f)    On February 5, 2016, **RODRÍGUEZ** was encountered by the Customs & Border Protection (CBP) AT-CET outbound roving patrol team during outbound inspection on JetBlue flight # B6 2037 destined to the Dominican Republic. **RODRÍGUEZ** was arrested by immigration officers and served with an Expedited Removal Order.

(g)    On February 29, 2016, **RODRÍGUEZ** was convicted & sentenced to time served for Violation of Title 8 U.S.C. § 1325 – Illegal Entry, Concealment of Facts.

(h)    On April 5, 2016, **RODRÍGUEZ** was physically removed from the United States to the Dominican Republic from the Port of New Orleans, Louisiana, pursuant to a removal order.

(i)    On January 23, 2017, **RODRÍGUEZ** was encountered upon being intercepted at sea by the United States Coast Guard (USCG).

(j)    On January 25, 2017, a removal order reinstatement was issued against **RODRÍGUEZ** and criminally prosecuted for violating 8 U.S.C. § 1326(a) – Reentry of removed alien.

(k)    On April 19, 2017, **RODRÍGUEZ** pleaded guilty as charged.

(l)    On May 2, 2017, **RODRÍGUEZ** was convicted and sentenced to six (06) months imprisonment and a supervised release term of one (01) year.

(m)    On September 5, 2017, **RODRÍGUEZ** was physically removed from the United States to the Dominican Republic from the Port of Atlanta, Georgia, pursuant to a removal order.

15.    BPA's advised **RODRÍGUEZ** of his right to legal representation and his right to

speak with the Consular Officer of his native country, the Dominican Republic.

16.    **RODRÍGUEZ** was found in, after having re-entered the United States at a place other than a designated Port of Entry.

17.    **RODRÍGUEZ** is a national and citizen of the Dominican Republic who does not possess any immigration documents allowing him to enter and/or remain in the United States legally, to include but not limited, the lack of express consent from the Attorney General of the United States, or his successor, the Secretary of the Department of Homeland Security, to reapply for admission into the United States.  Furthermore, **RODRÍGUEZ** was not inspected, admitted, or paroled into the United States by an Officer of the Bureau of Customs and Border Protection.

18.    **RODRÍGUEZ** does not have any petitions pending with the Bureau of Citizenship & Immigration Services.

19.    Based upon my training, experience, and participation in other investigations, and based on the facts revealed in this investigation, I believe that sufficient probable cause exists to demonstrate the commission of a violation of federal law by the above-mentioned subject, to wit, a violation of Title 8, United States Code, Sections 1326(a) & (b)(1).

Luis Polo
Border Patrol Agent

Subscribed and sworn before me pursuant to FRCP 4.1 at __11:52 am__ by telephone, this __27th__ day of May 2026.

Honorable Héctor Ramos-Vega
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF PUERTO RICO

5